Fuchsberg, J.
(dissenting). I agree with all the members of this court, as had all the Justices at the Appellate Division, that the defendant Wolf breached his undisputed obligation to negotiate in good faith for renewal of his contract with ABC. Where we part company is in the ma *407 jority’s unwillingness to mold an equitable decree, even one more limited than the harsh one the plaintiff proposed, to right the wrong.
Central to the disposition of this case is the first-refusal provision. Its terms are worth recounting. They plainly provide that, in the 90-day period immediately succeeding the termination of his ABC contract, before Wolf could accept a position as sportscaster with another company, he first had to afford ABC the opportunity to engage him on like terms. True, he was not required to entertain offers, whether from ABC or anyone else, during that period. In that event he, of course, would be off the air for that 90 days, during which ABC could attempt to orient its listeners from Wolf to his successor. On the other hand, if Wolf wished to continue to broadcast actively during the 90 days, ABC’s right of first refusal put it in a position to make sure that Wolf was not doing so for a competitior. One way or the other, however labeled, the total effect of the first refusal agreement was that of an express conditional covenant under which Wolf could be restricted from appearing on the air other than for ABC for the 90-day posttermination period.
One need not be in the broadcasting business to understand that the restriction ABC bargained for, and Wolf granted, when they entered into the original employment contract was not inconsequential. The earnings of broadcasting companies are directly related to the “ratings” they receive. This, in turn, is at least in part dependent on the popularity of personalities like Wolf. It therefore was to ABC’s advantage, once Wolf came into its employ, especially since he was new to the New York market, that it enhance his popularity by feáturing, advertising and otherwise promoting him. This meant that the loyalty of at least part of the station’s listening audience would become identified with Wolf, thus enhancing his potential value to competitors, as witness the fact that, in place of the $250,-000* he was receiving during his last year with ABC, he *408 was able to command $400,000 to $450,000 per annum in his CBS “deal”. A reasonable opportunity during which ABC could cope with such an assault on its good will had to be behind the clause in question.
Moreover, it is undisputed that, when in late February Wolf executed the contract for an extension of employment during the 90-day hiatus for which the parties had bargained, ABC had every right to expect that Wolf had not already committed himself to an exclusivity provision in a producer’s contract with CBS in violation of the good-faith negotiation clause (see majority opn at pp 397-398). Surely, had ABC been aware of this gross breach, had it not been duped into giving an uninformed consent, it would not have agreed to serve as a self-destructive vehicle for the further enhancement of Wolf’s potential for taking his ABC-earned following with him.
In the face of these considerations, the majority rationalizes its position of powerlessness to grant equitable relief by choosing to interpret the contract as though there were no restrictive covenant, express or implied. However, as demonstrated, there is, in 'fact, an express three-month negative covenant which, because of Wolf’s misconduct, ABC was effectively denied the opportunity to exercise. Enforcement of this covenant, by enjoining Wolf from broadcasting for a three-month period, would depart from no entrenched legal precedent. Rather, it would accord with equity’s boasted flexibility (see 11 Williston, Contracts [3d ed], § 1450, at pp 1043-1044; 6A Corbin, Contracts, § 1394, at p 100; see, generally, 20 NY Jur [rev], Equity, §§ 79, 83, 84).
That said, a few words are in order regarding the majority’s insistence that Wolf did not breach the first-refusal clause. It is remarkable that, to this end, it has to ignore its own crediting of the Appellate Division’s express finding that, as far back as February 1, 1980, fully a month before the ABC contract was to terminate, “Wolf and CBS orally agreed on the terms of Wolf’s employment as sportscaster for WCBS-TV” (majority opn, at p 399; see American Broadcasting Cos. v Wolf, 76 AD2d 162, 166, 170-171). It follows that the overt written CBS-Wolf option contract, *409 which permitted Wolf to formally accept the CBS sportscasting offer at the end of the first-refusal period, was nothing but a charade.
Further, on this score, the majority’s premise that Wolf could not have breached the first-refusal clause when he accepted the producer’s agreement, exclusivity provision and all, during the term of his ABC contract, does not withstand analysis. So precious a reading of the arrangement with ABC frustrates the very purpose for which it had to have been made. Such a classical exaltation of form over substance is hardly to be countenanced by equity (see Washer v Seager, 272 App Div 297, affd 297 NY 918).
For all these reasons, in my view, literal as well as proverbial justice should have brought a modification of the order of the Appellate Division to include a 90-day injunction — no more and no less than the relatively short and certainly not unreasonable transitional period for which ABC and Wolf struck their bargain.
Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur with Chief Judge Cooke; Judge Fuchsberg dissents in part and votes to modify in a separate opinion.
Order affirmed, with costs.

 This figure is taken from the ABC-Wolf agreement, as reproduced in the record, rather than the $150,000 figure mentioned in the officially reported Appellate Division opinion (76 AD2d 162, 165).